UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SHANDUKE MCPHATTER,

                    Plaintiff,

              -against-

MICHELE MOSS-JONES,                           Complaint
and Detective DANIEL ATHERLEY, Shield No.
2396, Individually and as members of the           Jury Trial Demanded
New York City Police Department;
ASSISTANT DISTRICT ATTORNEY
NAPHTALIE AZOR, Individually and as a
member of the Kings County District
Attorney's Office; CITY OF NEW YORK;
and JOHN and JANE DOE 1 through 10,
individually and in their official capacities (the names
John and Jane Doe being fictitious,
as the true names are presently unknown),

                    Defendants.
------------------------------------------------------------------x

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

5. This Court has supplemental jurisdiction over the New York State

claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action.

## PARTIES

7. Plaintiff Shanduke McPhatter ("plaintiff" or "Mr. McPhatter") is a resident of Kings County in the City and State of New York.

8. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the New York City Police Department (herein referred to as "NYPD") and the Kings County District Attorney's Office, both of which are a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers and district attorneys, including the individually named defendants herein.

9. Defendant Detective Daniel Atherley, Shield No. Atherley ("Atherley"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Atherley is sued in his individual and official capacities.

10. Defendant Michele Moss-Jones ("Moss-Jones"), at all times relevant herein, was an employee and agent of the NYPD. Specifically, Ms. Moss-Jones worked as a tow-truck driver for the NYPD. Defendant Moss-Jones is sued in her individual and official capacities.

11. Defendant Assistant District Attorney Naphtalie Azor ("Azor"), at all times relevant herein, was an officer, employee and agent of the Kings County District Attorney's Office. Defendant Azor is sued in her individual and official

capacities.

12. At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the NYPD and the Kings County District Attorney's Office. Plaintiff does not know the real names or shield numbers of defendants John and Jane Doe 1 through 10.

13. At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the City of New York, the Kings County District Attorney's Office and the NYPD. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

14. At all times relevant herein, all individual defendants were acting under the color of state law.

## STATEMENT OF FACTS

15. On or about December 23, 2019, Defendant Moss-Jones filed a complaint with the NYPD under complaint number 2019-088-005033, claiming that she was harassed and threatened.

16. On or about January 4, 2020, Defendant Moss-Jones filed another complaint, under complaint number 2020-088-000052, alleging that she was harassed and threatened on the same day, in front of 475 Carlton Avenue in Brooklyn.

17. Prior to arriving at the precinct to make her complaint, Defendant Moss-Jones acted under the color of state law and investigated to determine who her assailant was. She was informed by a neighbor, who showed her a Facebook

page, that her assailant was Shanduke McPhatter.

18.   Defendant Moss-Jones provided this information to Defendant Det. Atherley.

19.   On January 4, 2020, Defendant Atherley showed Defendant Moss-Jones a photobook, wherein Moss-Jones identified Plaintiff.

20.   On January 6, 2020, at approximately 6:10PM, Det. Atherley arrested Shanduke McPhatter. After Mr. McPhatter's arrest, Det. Atherley texted Defendant Moss-Jones a picture of Mr. McPhatter. Defendant Moss-Jones identified Mr. McPhatter as her assailant.

21.   Roughly 24 hours later after being incarcerated at both the 88th Precinct and at Kings County Central Booking, Mr. McPhatter was arraigned.

22.   Significantly, the first accusatory instrument filed on January 7, 2020 against Mr. McPhatter stated that the two incidents alleged by Defendant Moss-Jones occurred at 475 Carlton Avenue. *See* Exhibit A. Defendant Azor swore to the truth of the facts in the first accusatory instrument. Notably, Defendant Azor's allegations align with the complaint report made by Defendant Moss-Jones as to where the occurrence happened. *See* Exhibit B.

23.   Apparently, on January 8, 2020, Defendant Azor misstated where the incident occurred, as there was a second complaint report filed, listing the place of occurrence as 770 Fulton Street. *See* Exhibit C. Defendant Moss-Jones signed a supporting declaration swearing to the second complaint.

24.   Upon information and belief, there is surveillance footage that proves

that there was no altercation between Mr. McPhatter and Defendant Moss-Jones.

25. Upon information and belief, neither the Kings County District Attorneys Office nor the NYPD made an effort to view the surveillance footage, which would have proven that Defendant Moss-Jones falsely identified Mr. McPhatter.

26. On June 21, 2022, the charges against Mr. McPhatter were dismissed. *See* Exhibit D.

27. Within ninety days after the claim alleged in this Complaint arose, a written notice of claim was served upon defendants at the Comptroller's Office.

28. At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

29. Mr. McPhatter suffered damage as a result of defendants' actions. Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, bodily injury, anxiety, embarrassment, humiliation, an unlawful search and damage to his reputation.

## FIRST CLAIM
### Unlawful Detention and Deprivation of Liberty

30. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

31. Defendants violated the Fourth and Fourteenth Amendments because they arrested and detained Plaintiff without probable cause. Plaintiff also suffered approximately 24 hours of unlawful detention.

32.  As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein before alleged.

## SECOND CLAIM
### False Arrest

33.  Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

34.  Defendants violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause.

35.  As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
### MALICIOUS PROSECUTION AND ABUSE OF PROCESS

36.  Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

37.  Upon information and belief, there was surveillance footage that would have exonerated Mr. McPhatter. Neither the NYPD nor the District Attorney's Office attempted to view said footage.

38.  Ms. Moss-Jones did not initially identify Mr. McPhatter as the person she had the altercations with; she was told that he was the perpetrator by a person who was not a witness to the altercation.

39.  Mr. McPhatter was only identified as the suspect after it was suggested to Ms. Moss-Jones that he was the perpetrator.

40.  Knowing that Mr. McPhatter was not the person that threatened Ms.

Moss-Jones and that any colorable cause to prosecute Mr. McPhatter had evaporated, prosecutor Azor, in the capacity of an investigator or "witness" acted in concert and conspired with Detective Atherley and Moss-Jones and others, named and unnamed, to use any means, no matter how unlawful or coercive, to take this matter to trial.

41.    These illegal and unconstitutional means included, but were not limited to, signing false sworn depositions, conducting suggestive identification procedures, and failing to conduct any meaningful investigation regarding the complaining witness.

42.    At every juncture, the Defendants herein misrepresented the reliability of the complaining witness and ignored all of the physical evidence that the complaining witness was not reliable.

43.    The foregoing violations of Plaintiff's federal constitutional rights by the Defendants and their co-conspirators and accomplices, known and unknown, directly, substantially, proximately, and foreseeably caused the initiation and continuation of Plaintiff's criminal prosecution, his loss of liberty, and his other injuries and damages.

44.    The forgoing violations of Plaintiff's rights amounted to Constitutional torts and were affected by actions taken under color of State law, and within the scope of the Defendants' employment and authority.

45.    Defendants committed the foregoing violations of Plaintiff's rights knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference to

Plaintiff's constitutional rights or to the effect of such misconduct upon Plaintiff's constitutional rights.

46. By reason of the foregoing, the Defendants are liable to plaintiff, under 42 U.S.C. 1983, for compensatory and for punitive damages.

### THIRD CLAIM
### State Law Abuse of Power

47. Defendants, individually, in concert with, conspiring with, and/or aiding and abetting one another and other persons for whose acts they are liable, employed regularly issued criminal legal process against Plaintiff.

48. Specifically, they prosecuted Mr. McPhatter knowing full well that the complaining witness in this case was completely unreliable and not sure in her identification of Mr. McPhatter.

49. Defendants used such process in a perverted manner to obtain a collateral objective outside the legitimate ends of the process used, namely, to gain an unlawful arrest and conviction of Plaintiff. Defendants knew, believed, and intended that this evidence would later be used in court against Plaintiff at his criminal trial, and which were so used until the case was dismissed.

50. Defendants did so with an intent to do harm to Plaintiff, with actual malice, and without excuse or justification.

51. By virtue of the foregoing, Plaintiff was caused the actual and special damages identified in the subsection labeled Plaintiff's Damages.

### FOURTH CLAIM
### State Law False Imprisonment and False Arrest

52. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

53. By their conduct, as described herein, the individual defendants are liable to plaintiff for falsely imprisoning and falsely arresting plaintiff.

54. Plaintiff was conscious of his confinement.

55. Plaintiff did not consent to his confinement.

56. Plaintiff's confinement was not otherwise privileged.

57. Defendant City of New York, as an employer of the individual defendant officers and prosecutors, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

58. As a direct and proximate result of the misconduct and abuse of authority stated above, plaintiff sustained the damages alleged herein.

### FIFTH CLAIM
### Denial Of Constitutional and Statutory Right
### To a Speedy Trial

59. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

60. The individual defendants created false evidence against Plaintiff.

61. The individual defendants forwarded false evidence to prosecutors in the Kings County District Attorney's office and individual prosecutors knew that this evidence was unreliable because they were front and center during the investigation.

62. In creating false evidence against plaintiff, and in presenting false

information to the jury, the individual defendants violated plaintiff's right to fair court proceedings and caused plaintiff to be subjected to two and a half years of unlawful legal proceedings in violation of the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

63. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### SIXTH CLAIM
### Negligent Hiring, Training and Retention

64. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

65. Defendant City, through the NYPD and the Kings County District Attorney's Office, owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

66. Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

67. Upon information and belief, defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants were potentially dangerous.

68. Upon information and belief, defendant City's negligence in screening, hiring, training, disciplining, and retaining these defendants proximately caused

each of plaintiff's injuries.

69. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
### Failure To Intervene

70. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

71. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

72. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

73. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
### (Monell 42 U.S.C. 1983: Claim Against Defendants City of New York, for the Actions of the Kings County District Attorney's Office and the NYPD)

74. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

75. The foregoing violations of Plaintiff's federal constitutional rights and injuries were further directly, foreseeably, proximately, and substantially caused by conduct, chargeable to Defendants, amounting to deliberate indifference to the

constitutional rights of persons, including Plaintiff, who are investigated, arrested, or prosecuted for alleged criminal activities.

76. Prior to Plaintiff's arrest, policymaking officials at the NYPD and the Kings County District Attorney's Office, with deliberate indifference to the constitutional rights of individuals suspected or accused of criminal activity, to the risk of arresting, prosecuting and convicting innocent people, and to the right of all criminal suspects and defendants to due process and a fair trial, implemented plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and discipline concerning:

- The failure to appropriately vet erroneous and suggestive identification procedures.

77. With respect to the above paragraph, prior to Plaintiff's arrest and the initiation of his prosecution in 2020 through 2022, the NYPD or the Kings County District Attorney's Office provided minimal training on the best practices to prevent wrongful convictions relating based upon unreliable identifications.

78. The aforesaid deliberate or de facto policies, procedures, regulations, practices and/or customs (including the failure to properly instruct, train, supervise and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials for the Defendants New York City who knew or should have known):

(a) to a moral certainty that such policies, procedures, regulations, practices, and/or customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

  (b) that such issues either present police employees with difficult choices of the sort that instruction, training and/or supervision will make less difficult or that the need for further instruction, training, supervision will make less difficult or that the need for further instruction, training, supervision and/or discipline was demonstrated by a history of police employees mishandling such situations as well as the incentives that police employees have to make the wrong choice; and

  (c) that the wrong choice by such employees concerning such issues will frequently cause the deprivation of the constitutional rights of criminal suspects or defendants and cause them constitutional injury.

79. The aforementioned policymaking officials had the knowledge and the notice alleged in the preceding paragraph based upon complaints that defendant New York City received for *years*.

80. Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner/Chief (or his authorized delegates), has final responsibility for training, instructing, supervising, and disciplining police personnel with respect to the investigation and prosecution of criminal matters, including identification procedures and how to conduct basic investigations.

81. The Police Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority, and constitutes a city policymaker for whom the City is liable, with respect to compliance by the NYPD employees with the above-mentioned constitutional requirements.

82. During all times material to this Complaint, the Police Commissioner owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs, practices, training and discipline sufficient to prevent or deter conduct by his subordinates violating the aforementioned constitutional rights of criminal

suspects or defendants and of other members of the public.

83. The aforesaid policies, procedures, regulations, practices and/or customs of Defendant City of New York, NYPD and the Kings County District Attorney's Office were collectively and individually a substantial factor in bringing about the aforesaid violations by the Individual Police Defendants of Plaintiff's rights under the Constitution and laws of the United States.

84. By virtue of the foregoing, Defendant City of New York is liable for having substantially caused the foregoing violations of Plaintiff's rights and his constitutional injuries.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: August 25, 2024
Forest Hills, New York

JUSTIN C BONUS ATTORNEY AT LAW

*Justin Bonus*
Justin C. Bonus, Esq.
118-35 Queens Blvd, Suite 400
Forest Hills, NY 11375

-14-

347-920-0160
Justin.bonus@gmail.com

*Attorneys for Plaintiff*